## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DIETER HAGGAR,
     Plaintiff

    v.

DENIS McDONOUGH, Secretary,
U.S. Department of Veterans Affairs,
     Defendant.

Civil Action No. 23-277 (CKK)

## MEMORANDUM OPINION & ORDER
(December 12, 2024)

Plaintiff Dieter Haggar brings this action under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*, against Defendant Denis McDonough, Secretary of the United States Department of Veterans Affairs (the "Department"). Now before the Court is the Department's [7] Partial Motion to Dismiss Haggar's Amended Complaint. Having reviewed the parties briefing, the record, and the applicable law,[1] the Court **DENIES WITHOUT PREJUDICE** the Department's motion. Instead, the Court concludes that it lacks subject-matter jurisdiction over this suit at present. Because the Court's subject-matter jurisdiction is contingent on whether Haggar waives his claims in excess of $10,000, the Court **ORDERS** that he file a notice of such waiver on or before December 20, 2024. If he does not do so, the Court will transfer this matter to the United States Court of Federal Claims.

---

1 The Court's consideration focused on:
- Haggar's Amended Complaint, ECF No. 6 ("Am. Compl.");
- The Department's Memorandum in Support of the Partial Motion to Dismiss, ECF No. 7-1 ("Def.'s Mot.");
- Haggar's Memorandum in Opposition to the Partial Motion to Dismiss, ECF No. 9 ("Pl.'s Opp'n");
- The Department's Reply, ECF No. 13 ("Def.'s Reply"); and
- The Department's Notice of Supplemental Authority, ECF No. 16.

Exercising its discretion, the Court concludes that oral argument is unnecessary to resolve the motion. *See* LCvR 7(f).

# I. BACKGROUND

The Department has employed Haggar as a Criminal Investigator and Special Agent since 2018. Am. Compl. ¶¶ 14–15. In that capacity, Haggar is tasked with the personal protection of Secretary McDonough. *Id.* ¶ 16. To carry out his mission, Haggar reconnoiters sites the Secretary will visit, undertakes "protective threat assessments," and conducts investigations. *Id.*

Haggar's title and responsibilities make him eligible for Law Enforcement Availability Pay (LEAP). *See* Am. Compl. ¶¶ 23–26. LEAP compensates certain federal law enforcement personnel "to ensure the[ir] availability" for periods of "unscheduled duty" beyond the standard 40-hour workweek. 5 U.S.C. § 5545a(b). LEAP is different than scheduled overtime pay. *See Horvath v. United States*, 896 F.3d 1317 (Fed. Cir. 2018) (analyzing the different statutory schemes in greater detail). And the distinction between the two is at the heart of this dispute.

Haggar alleges that, in an effort to implement a biweekly cap on its employees' work hours, the Department began accounting for LEAP and overtime pay incorrectly. *See* Am. Compl. ¶¶ 26–30. He contends that the Department miscalculated the hours he worked during allotted mealtimes, night shifts, business travel, federal holidays, and Sundays. *Id.* ¶¶ 30, 33–35, 38–39. And he further alleges that the Department withheld certain deferred rollover LEAP payments. *Id.* ¶¶ 36–37. Haggar calculates that this litany of accounting errors deprived him of more than $100,000 in LEAP and overtime wages. *See id.* ¶¶ 33–35, 37, 39.

Haggar and other LEAP-eligible employees reported these issues to the Department. Am. Compl. ¶¶ 32, 40. Haggar also spoke to Department staff about other problems with his work schedule and placement. *See id.* ¶¶ 46–74. But Haggar's proposed reforms to the Department's accounting and scheduling practices were not implemented. *See id.* ¶¶ 75–76, 90. And Haggar alleges that the Department retaliated against him for his advocacy by approving a change to its

law enforcement retirement policy that would ensure his ineligibility. *Id.* ¶¶ 87–91. Haggar filed a whistleblower complaint regarding this alleged retaliation, and the Department granted him eligibility for the retirement program a few months later. *Id.* ¶¶ 92–93. But the delay caused a nearly $30,000 shortfall in Haggar's retirement contributions. *See id.* ¶¶ 93–97.

In 2023, Haggar filed this suit against the Department. He asserts two claims, both under the Fair Labor Standards Act. Am. Compl. ¶¶ 108–123. First, he claims the Department violated 29 U.S.C. § 207 by willfully depriving him of wages owed. *Id.* ¶¶ 110–114.[2] Second, he alleges the Department violated 29 U.S.C. § 215(a)(3) by retaliating against him. *Id.* ¶¶ 120–23. In his prayer for relief, Haggar seeks, among other things, trebled "back pay and compensatory damages in the amount of $500,000.00." *Id.* at 22. FLSA authorizes the payment of such damages for both of Haggar's claims. *See* 29 U.S.C. § 216(b).

The Department moved to dismiss Haggar's retaliation claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* Def.'s Mot at 10–14. But it also explained why "this Court has [subject-matter] jurisdiction over [Haggar's] FLSA claims despite contrary district court and Federal Circuit holdings." *Id.* at 10. In his Opposition, Haggar joined the Department in arguing that this Court has subject-matter jurisdiction over his claims. Pl.'s Opp'n at 2–4. In short, as Haggar explained, "both parties wish to remain within the jurisdiction of the District Court." *Id.* at 3. This matter is now ripe for the Court's review.

## II. STANDARD OF REVIEW

Federal courts "are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). And this Court has "an independent obligation to determine whether subject-

---

[2] Haggar cites to 29 U.S.C. § 206 (which concerns minimum wages). Am. Compl. ¶ 110. But his claim rests more naturally on 29 U.S.C. § 207 (which concerns overtime wages). The distinction is immaterial for present purposes.

matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008). If the Court finds that it lacks subject-matter jurisdiction over a civil action, it may, in the interest of justice, transfer that action to another court where it could have been brought at the time the action was filed. 28 U.S.C. § 1631. Otherwise, it must dismiss.

### III. ANALYSIS

The Tucker Act grants the United States Court of Federal Claims jurisdiction over nontort monetary claims "against the United States founded . . . upon . . . any Act of Congress.'" 28 U.S.C. § 1491(a)(1)). The Little Tucker Act grants the same jurisdiction to federal district courts—but only for claims "not exceeding $10,000 in amount." *Id.* § 1346(a)(2). Taken together, the two Tucker Acts grant the Court of Federal Claims and district courts concurrent jurisdiction over nontort civil actions against the United States for less than $10,000, but claims "exceeding the $10,000 jurisdictional ceiling . . . are within the exclusive jurisdiction" of the Court of Federal Claims. *Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003) (quoting *Goble v. Marsh*, 685 F.2d 12, 15 (D.C. Cir. 1982)).

FLSA—an Act of Congress—creates a nontort civil cause of action against employers, including the United States and its agencies. As relevant here, an employer who violates 29 U.S.C. §§ 207 or 215(a)(3) "shall be liable" to the affected employee for, among other things, backpay, compensatory damages, and liquidated damages. 29 U.S.C. § 216(b). And "[a]n action to recover" monetary damages under FLSA "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction." *Id.*

Applying this statutory framework, the U.S. Court of Appeals for the District of Columbia Circuit held in *Waters v. Rumsfeld*, 320 F.3d 265, 272 (D.C. Cir. 2003), that "the Court of Federal

Claims has exclusive jurisdiction" to adjudicate all FLSA claims against federal employers for damages "in excess of $10,000." That view has long prevailed in other circuits. *See, e.g.*, *Parker v. King*, 935 F.2d 1174, 1177 (11th Cir. 1991); *Zumerling v. Devine*, 769 F.2d 745, 749 (Fed. Cir. 1985); *Graham v. Henegar*, 640 F.2d 732, 734 (5th Cir. 1981). And in the years since *Waters*, "[c]ourts in this circuit have consistently held that claims against the United States brought pursuant to . . . FLSA . . . must satisfy the jurisdictional requirements of the" Tucker Acts. *Johnson v. Lightfoot*, 273 F.3d 278, 287 (D.D.C. 2017) (RC) (collecting cases).

Here, *Waters*'s holding divests the Court of jurisdiction over Haggar's claims. Haggar seeks "back pay and compensatory damages in the amount of $500,000.00." Am. Compl. at 22. Even in isolation and without trebling, both of Haggar's FLSA claims exceed $10,000. *See id.* ¶¶ 33–35, 37, 39 (Section 207 damages totaling more than $100,000); *id.* ¶¶ 93–97 (Section 215 damages totaling nearly $30,000). Because Haggar's FLSA claims exceed the Tucker Acts' jurisdictional threshold, the Court of Federal Claims has exclusive jurisdiction to adjudicate them.

Both parties argue that the Court has subject-matter jurisdiction over Haggar's claims despite *Waters*'s holding. Def.'s Mot. at 4; Pl.'s Opp'n at 3. That is so, they contend, because "the D.C. Circuit's controlling holding in *Waters* is no longer good law considering the Supreme Court's reasoning in *United States v. Bormes*, 568 U.S. 6, 19 (2012)." Def.'s Mot. at 4.

*Bormes* arrived at the Supreme Court as a putative class action against the United States under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* 568 U.S. at 8. Below, the Federal Circuit had held that the Little Tucker Act waived the United States' sovereign immunity against suit under FCRA "[w]ithout deciding whether FCRA itself contained the requisite waiver of sovereign immunity." *Id.* at 9. The Supreme Court reversed and explained that "[w]here, as in FCRA, a statute contains its own self-executing remedial scheme, we look only to that statute to

determine whether Congress intended to subject the United States to damages liability." *Id.* 11. The Court determined that the putative class in *Bormes* could not "mix and match FCRA's provisions with the Little Tucker Act's immunity waiver to create an action against the United States." *Id.* at 15.  And the Court remanded for further proceedings to determine whether FCRA waived sovereign immunity on its own. *Id.* at 16.

The parties concede—as they must—that *Bormes* does not directly overturn *Waters*. *E.g.*, Def.'s Mot. at 7–8.  But they contend that *Bormes* "would cause the D.C. Circuit to reconsider its holding" that this Court lacks subject-matter jurisdiction over FLSA claims against federal employers in excess of $10,000. *Id.* at 8; *accord* Pl.'s Opp'n at 3.  Their argument proceeds as follows:  FLSA, like FCRA, sets out a detailed remedial scheme; so *Bormes* suggests that courts should look only to FLSA; therefore the Tucker Acts present no jurisdictional hurdle.

The Court now joins others in this District in rejecting this invitation to disregard *Waters*.[3] Put simply, "*Bormes* is not primarily on point."  *Adair v. Bureau of Customs & Border Prot.*, 191 F. Supp. 3d 129, 133 (D.D.C. 2016) (CRC).  *Bormes* arose in a different posture: a class action, not an individual damages suit.  It concerned a different issue: sovereign immunity, not subject-matter jurisdiction.  And critically, it interpreted a different statute: FCRA, not FLSA.  As the only court of appeals to have considered the parties' argument explained:

> [The *Bormes*] ruling and its rationale do not extend to [a] FLSA suit.  In sharp contrast to the statute at issue in *Bormes*, the FLSA contains no congressional specification of a non-Tucker Act forum for damages suits, or any other basis, from which one can infer that application of the Tucker Act would override choices about suing the government embodied in the remedial scheme of the statute providing the basis for liability.  That statute-specific conclusion takes this FLSA case outside the reach of the *Bormes* principle.

---

[3] *E.g.*, *Johnson*, 273 F. Supp. 3d at 288; *Moss v. McDonough*, No. 23-cv-276, 2024 WL 3443597, at *4 (D.D.C. July 15, 2024) (RBW); *Owens v. Thompson*, No. 23-cv-662, 2024 WL 1328461, at *4 (D.D.C. Mar. 28, 2024) (TSC); *Alston v. Bethea*, No. 22-cv-3595, 2023 WL 4198203, at *3 (D.D.C. June 27, 2023) (JEB); *Atta v. Consumer Fin. Prot. Bureau*, No. 18-cv-2033, 2019 WL 13292029, at *2 (D.D.C. Apr. 29, 2019) (ABJ).

*Abbey v. United States*, 745 F.3d 1363, 1370 (Fed. Cir. 2014)[4]; *see also Metzinger v. Dep't of Veterans Affs.*, 20 F.4th 778, 783–84 (Fed. Cir. 2021).

This Court is "obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting *en banc*, or the Supreme Court, overrule[s] it." *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997). *Waters* has suffered neither fate. Nor, for the reasons explained, has *Waters*'s reasoning been "eviscerated" by the Supreme Court's holding in *Bormes*. *See Dellums v. U.S. Nuclear Regul. Comm'n*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988). Accordingly, the Court must, and does, conclude that it lacks subject-matter jurisdiction over Haggar's claims as currently articulated.

Because the Court lacks subject-matter jurisdiction over this suit at present, it must determine whether to dismiss or transfer it. *See* 28 U.S.C. § 1631. The Court of Federal Claims indisputably has subject-matter jurisdiction over this matter. *See* 28 U.S.C. § 1491(a)(1). So the only question for the Court is whether transfer to that forum is in the interest of justice. *See Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 549 (D.C. Cir. 1992). Transfer is in the interest of justice when "the original action was misfiled . . . by a plaintiff who, in good faith, misinterpreted a complex or novel jurisdictional provision." *Janvey v. Proskauer Rose LLP*, 59 F. Supp. 3d 1, 7 (D.D.C. 2014) (CKK) (collecting cases). For that reason, the Court finds that transfer to the Court of Federal Claims, in lieu of dismissal, is in the interest of justice.

However, that is not the end of the matter. "From the outset[,] courts have permitted plaintiffs to remain in District Court under the Tucker Act even if their damages exceed $10,000

---

[4] Haggar attempts to distinguish *Abbey v. United States*, 745 F.3d 1363 (Fed. Cir. 2014), on the grounds that the defendant there "challenged jurisdiction" while the parties here both "wish to remain within the jurisdiction of the District Court." Pl.'s Opp'n at 2–3. "But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

in amount, as long as they waive any claims in excess of $10,000." *Goble*, 684 F.2d at 15. And under 28 U.S.C. § 1653, "[d]effective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." As a result, when jurisdiction over a FLSA claim is lacking because the claim exceeds the Tucker Acts' damages threshold, the Court must give the plaintiff "an opportunity to amend [the complaint] to effect an adequate waiver" of claims in excess of $10,000 before transferring the action. *Goble*, 684 F.2d at 17.

Haggar has not yet stated whether he would prefer to waive portions of his claims and remain in this Court or seek the full value of his claims in the Court of Federal Claims. The Court will give him an opportunity to do so. If Haggar chooses not to effect a waiver, the Court will lack subject-matter jurisdiction and transfer this matter to the Court of Federal Claims.

## IV. CONCLUSION & ORDER

For the foregoing reasons, it is hereby:

**ORDERED** that the Department's [7] Partial Motion to Dismiss Haggar's Amended Complaint is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Haggar file a notice reporting whether he waives his claims over $10,000 on or before December 20, 2024. If he does not do so, or if he reports that he does not waive those claims, the Court will transfer this matter to the United States Court of Federal Claims.

**SO ORDERED.**

**Date:** December 12, 2024.

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge